## Tatum v. State.

(Division B. Oct. 12, 1936.)

[169 So. 841. No. 32336.]

**J. W. T. Falkner, C. A. Bratton** and **Samuel V. Pack,** all of Oxford, for appellant.

**Webb M. Mize,** Assistant Attorney General, for the state.

Argued orally by **C. A. Bratton**, for appellant, and by Webb **M. Mize**, for the state.

**Ethridge, P. J.**, delivered the opinion of the court.

Appellant, J. E. Tatum, was indicted at the September, 1935, term of the Lafayette county circuit court for the murder of his wife, Mrs. Vivian Cooper Tatum; was convicted and given a life sentence in the state penitentiary, from which this appeal is prosecuted.

It appears that this killing occurred on September 9, 1931.

It was the theory of the state that the appellant and his wife returned from a visit late in the afternoon of that day and that the appellant drove his car up to the back porch of his home, this being his custom in order that he might step conveniently from the running board to the porch. His wife got out of the car and started into the house. Appellant took out of the car a shotgun, and holding this, he placed his artificial foot upon the running board and started out of the car. The gun was fired by the appellant from this position, striking his wife beneath the left shoulder blade, the shot then ranged upward and lodged in the left side of the right breast, producing a bulging, as one witness described it, like a "chicken crop."

The state produced two eyewitnesses who claimed to have witnessed the killing, and they testified that the appellant pointed the gun at his wife; that, at first, it snapped and did not go off; that his wife cried out, "Oh Jesse;" that the appellant fired and his wife fell; that the appellant then ran out in the yard and began to beat the gun on the ground, and called a neighbor, stating that his wife was shot.

There was other testimony tending to show family trouble and a motive for the killing, the details of which are not necessary to be set out.

There was also introduced a witness who testified that she overheard an angry conversation between appellant and his wife regarding the presence in their home of a Memphis woman whom appellant had employed as a farm hand. There was a statement by another witness to the effect that, some time after the killing, in a rooming house in Memphis, the appellant stated to a woman, with whom he was staying for the night, that he killed his wife for the insurance; and, on the return trip from Memphis, both being intoxicated, the appellant more so than the witness, the appellant was driving the car and it began to wobble along on the highway; the witness took the steering wheel and took out the key, and the appellant told him that if he did not put the key back, he (the appellant) would do him like he did his wife, that the gun snapped in her case the first time, but that it would not snap in the witness' case, or words to that import.

It was the theory of the appellant that the gun was accidentally discharged. He stated that he stepped on the fender with his artificial left foot, stumbled and fell, and the gun struck the post which discharged it. He introduced witnesses who supported him to the extent that they saw signs on the post, and there were contradictions of various witnesses for the state, and conflict in the evidence.

It also appeared in the evidence that a body purporting to be a coroner's jury, not sworn, returned a verdict, that the crime was an accidental killing.

We do not deem it necessary to set forth, at length the varying testimony, nor the full details, but it will be sufficient to say that we have carefully examined the evidence, and have reached the conclusion that it is ample to sustain the verdict of guilty.

It is stated in the record that ''During the opening

argument for the state, counsel for the defendant passed up to the court the following written objection to said argument made by county attorney, Bramlett Roberts: 'Do you believe you would have been off up there on a drunk in a room house?' "

"Counsel for the defendant passed to the court the following written objection to the opening argument of county attorney, Bramlett Roberts, for the state: 'If you want to go out there and turn loose a fiendish, cold-blooded murder, then I say, destroy your court house.' "

"By the court: The exceptions filed by counsel for the defendant to the supposed statements by county attorney Bramlett Roberts in his opening argument, and in which exception counsel for the defendant attempts to quote the argument of attorney Bramlett Roberts, was not so understood by the court to be the language used by county attorney Bramlett Roberts in his opening argument, and therefore, because of that fact, overruled the said objections and exceptions."

No bill of exceptions was taken signed by two attorneys, but on the motion for a new trial, the appellant's attorney assigned as a ground therefor the above-quoted language, and offered to produce witnesses to support same. The motion for a new trial was overruled.

Section 590, Code 1930, provides that if the judge refuses to sign a bill of exceptions, it shall be lawful for two attorneys present at the time to sign same, and when so signed the bill of exceptions shall have the same force and effect as if signed by the judge. It was held in the case of Dreyfus v. Cage, 62 Miss. 605, that this statute provides the only remedy where the judge refuses to sign a bill of exceptions.

It follows, therefore, that there is no ground for reversal on the error complained of in that regard.

The appellant also complains of the following instruction for the state: "The court charges the jury for the state that while malice is necessary ingredient to the crime of murder, yet it does not necessarily take years,

months, weeks, days, hours, or even minutes, to form said malice, but malice may be formed within a moment's time." It is complained that this instruction does not use the words "malice aforethought," and that the court has made a distinction, in former cases, between "malice" and "malice aforethought." The state procured an instruction defining murder as the "killing of a human being without authority of law, when done by any means, or in any manner, with the deliberate design to effect the death of the person killed." This instruction concluded with these words, "And if the jury believe, from the evidence, beyond a reasonable doubt, that the defendant, at the time and place as alleged in the indictment, so killed the deceased, then he is guilty as charged, and you may return into court either of the following verdicts," setting forth the three forms as required by the statute.

The instruction complained of was not a definition of malice, or what was essential to constitute murder. This had already been defined by another instruction, and the rule is that all instructions are to be read and considered together. So, reading the instruction complained of in connection with the one defining murder, the jury must clearly have understood it was a deliberate design, which has been held, in numerous cases, to be equivalent to malice aforethought.

We are, therefore, of the opinion that there was no error committed in the trial court, and that its judgment should be affirmed.

Affirmed.